UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MANUEL WILLIAMS, | ) | CIV. 08-5096-AWB |
| | ) | |
| Petitioner, | ) | |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## INTRODUCTION

This matter is before the court pursuant to petitioner Manuel Williams'

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1]

[Docket 1].  Mr. Williams presents four grounds for relief.  The government

resists Mr. Williams' motion and moves to dismiss it in its entirety.  [Docket 6].

Also pending before the court are Mr. Williams' motion for an evidentiary

hearing and motion to amend his § 2255 motion.  [Dockets 4 & 5].

Mr. Williams' § 2255 motion and all related motions were referred to this

magistrate judge for a report and recommendation to the district court

pursuant to the district court's order, see Docket 8, and 28 U.S.C.

§ 636(b)(1)(B).

---

[1]Mr. Williams' § 2255 claims relate to his federal criminal file CR. 05-50081.  When Mr. Williams filed his § 2255 petition, a civil case file, CIV. 08-5096, was opened.  All filings with respect to Mr. Williams' § 2255 motion are made in this civil file, and the docket numbers referenced in this report and recommendation relate to the civil file.

## FACTS AND PROCEDURAL HISTORY

The following recitation includes those facts relevant to the claims raised in Mr. Williams' § 2255 motion. Additional facts will be discussed in the body of this opinion as needed.

On October 13, 2005, in the District of South Dakota, Mr. Williams was indicted on one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and two counts of distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[2] Mr. Williams' jury trial began on August 22, 2006, and concluded on August 24, 2006. Appointed by the court under the Criminal Justice Act, attorney George Grassby represented by Mr. Williams throughout these proceedings. The jury returned a verdict of guilty on all counts. The jury found Mr. Williams responsible for 500 grams of more of methamphetamine for the conspiracy count and 50 grams or more of methamphetamine for each distribution count.

On October 6, 2006, Jeffrey Viken, the Federal Public Defender for the Districts of South Dakota and North Dakota, filed an amended motion for substitution of counsel, requesting that he be appointed as counsel for Mr. Williams. The Office of the Federal Public Defender had hired Mr. Grassby

---

[2]Mr. Williams' co-defendant, Tony Vu, was indicted on one count of conspiracy to distribute a controlled substance and two counts of possession with intent to distribute a controlled substance.

as of October 2, 2006, to serve as an Assistant Federal Public Defender. Mr. Viken then intended to appoint Mr. Grassby, in his capacity as an Assistant Federal Public Defender, to continue to represent Mr. Williams. Mr. Grassby had informed Mr. Williams that a conflict would exist if he continued his representation. Mr. Grassby explained that the Office of the Federal Public Defender had represented a witness who testified against Mr. Williams at trial. Mr. Grassby spoke in Mr. Williams' native language, Spanish, to ensure that he understood the nature of the conflict. Mr. Grassby secured from Mr. Williams a written waiver of the conflict of interest to allow Mr. Grassby, as an Assistant Federal Public Defender, to continue to represent Mr. Williams. Mr. Williams also waived his right to raise in post-conviction proceedings any claim of conflict of interest.

Although noting that the "Federal Public Defender's office has made substantial efforts to ensure that [Mr. Williams] understands and waives the conflict of interest in this case," the district court denied the amended motion for substitution of counsel. The court determined that the conflict was "too direct and too significant to permit the substitution of counsel" because Assistant Federal Public Defender Gary Colbath, Jr., had represented Levi Garcia in his federal criminal case. Levi Garcia had provided considerable testimony against Mr. Williams at trial. The court explained that, because Mr. Williams had not been sentenced yet, "the potential still exist[ed] that Levi

Garcia's involvement in the instant case, in some form, might not be finished."

Thus, the court appointed attorney Bradley Borge to represent Mr. Williams.

Mr. Williams' sentencing hearing occurred on December 4, 2006. SH 1.[3]

A Spanish-speaking interpreter was present to assist Mr. Williams. SH 2. The government argued that a sentence within the advisory guideline range of 121 to 151 months was appropriate. Id. The government also requested that Mr. Williams' federal sentence run concurrent with his state sentence as both involved the same drugs and the same conspiracy. SH 3. Defense counsel Bradley Borge acknowledged that he "ha[d]n't found anything to argue to the Court to get this out of the guidelines, at the very least to get below the mandatory minimum." SH 4. Mr. Borge moved the court to sentence Mr. Williams toward the low end of the guidelines, around approximately 121 months. SH 4-5. Mr. Borge argued that the following factors justified such a sentence: (1) Mr. Williams' young age of 21 at the time of the offense; (2) Mr. Williams' lack of criminal history; (3) Mr. Williams' acknowledgment that he had a "problem" with controlled substances and had made very poor choices; and (4) Mr. Williams' financial obligations to his family. SH 3-5. Mr. Borge also requested that the court credit Mr. Williams for the time served while in custody. SH 5. Speaking through the interpreter, Mr. Williams also

---

[3]The court shall cite to the sentencing hearing transcript by referring to "SH" followed by the corresponding page number where the information may be found.

made a statement, apologizing to the court for the "harm [he] ha[d] caused."
SH 5.

The district court considered the advisory guidelines, presentence report,
the nature of the offenses charged, Mr. Williams' status as a illegal alien who
would be deported once he served his sentence, the quantity of drugs involved
(28 ounces of methamphetamine), and Mr. Williams' criminal history.[4]  SH 6-7.
Upon consideration of these factors, the court sentenced Mr. Williams to a term
of imprisonment of 121 months for each of the three counts of conviction.
SH 7.  The court ordered that these sentences run concurrently.  Id.  The court
also ordered that Mr. Williams' federal sentences run concurrent to his state
court sentence.  SH 6.  The court further ordered that, upon release from
imprisonment, Mr. Williams be placed on supervised release for a term of five
years for each count, with said terms to run concurrent to each other.  SH 6-7.
The court declined to assess any fines in this case, although the court ordered
Mr. Williams to pay a total of $300.00, or $100.00 for each count, to the
Victim's Assistance Fund.  SH 7.

The court informed Mr. Williams of his right to appeal.  SH 9.  Mr. Borge
informed the court that he was not a member of the Eighth Circuit Bar and,
thus, could not file an appeal or represent Mr. Williams before the Eighth

---

[4]The court noted that Mr. Williams' criminal history "consist[ed] of one
felony level conviction, which [was] the same conduct as the instant offense."
SH 6.

Circuit.  SH 9-10.  The court clarified that Mr. Borge could assist Mr. Williams in preparing and drafting the appeal, but Mr. Williams had to sign the appeal himself.  SH 10.  A judgment of conviction was filed on December 8, 2006.[5]

On December 11, 2006, Mr. Williams filed a *pro se* notice of appeal and motion for appointment of counsel.[6]  The Eighth Circuit appointed Mr. Borge to represent Mr. Williams during the appeals process.  The only issue raised by Mr. Williams on appeal concerned the cross-examination of Levi Garcia, a cooperating witness for the prosecution who testified as to Mr. Williams' involvement in the conspiracy to distribute methamphetamine.  See United States v. Williams, 249 Fed.Appx. 482, 2007 WL 2850595 at *1 (8th Cir. Oct. 3, 2007).  Specifically, Mr. Williams alleged that the district court abused its discretion in limiting his right to cross examine Garcia about Garcia's history of failing to appear for court dates.  Id.  Mr. Williams' argued that this line of questioning was probative on the issue of Garcia's truthfulness pursuant to Federal Rule of Evidence 608(b).[7]  Id.  The Eighth Circuit disagreed that

---

[5]Dated December 7, 2006.

[6]Dated December 7, 2006.

[7]At trial, Mr. Williams cross-examined Garcia as to the effect of methamphetamine use on his memory.  Trial Transcript ("TT") 24-25.  Garcia explained that he remembered the "big roundabout picture," but sometimes would forget small details "just like everybody else."  TT 25.  Mr. Williams asked Garcia if he "consider[ed] having to make an appearance in court something that [he] should remember?"  Id.  Garcia responded in the affirmative.  Id.  Mr. Williams began to question Garcia about a past failure to

Garcia's failure to appear for court proceedings was probative of his truthfulness.  Id.  However, the Eighth Circuit held that, even if such were the case, the district court had the discretion to disallow the line of questioning.  Id.  The Eighth Circuit determined that the district court did not abuse its discretion in doing so.  Id.  The Eighth Circuit affirmed the judgment of conviction in this case and, on October 26, 2007, issued its formal mandate.

On December 22, 2008, Mr. Williams filed in the district court a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[8]  In his § 2255 motion and accompanying memorandum, Mr. Williams alleges four grounds for relief: (1) defense attorney George Grassby had a conflict of interest that rendered his assistance ineffective; (2) the district court erred in failing to

_____

appear in court, and the government objected on the basis of "improper impeachment by a bad act not covered by Rule 404."  TT 25-26.  The district court considered the matter outside of the presence of the jury.  TT 26.  Mr. Williams stated that Garcia had a history of continuously failing to appear in court and failing to pay fines and also a history of writing bad checks.  TT. 26-27.  Mr. Williams argued that this history illustrated Garcia's poor memory.  TT 27.  Mr. Williams also argued that this history also spoke to the fact that Garcia "on a continuous basis lie[d] to the court system, to the banks, to people, and everywhere."  TT 28.  Mr. Williams argued that Garcia's credibility was crucial to the government's case because the government did not have any physical evidence to support Garcia's testimony.  TT 28-29.  Mr. Williams maintained that this type of evidence was admissible under Federal Rules of Evidence 404 and 608.  TT 28.  The government argued that this evidence of prior bad acts was inadmissable under Rule 404.  TT 27-28.  The court sustained the government's objection on the ground that such evidence did not speak to the issue of memory.  TT 27, 29.

[8]Dated December 11, 2008.

reduce the sentencing disparity between Mr. Williams and other co-conspirators; (3) the district court violated his due process rights by not considering Booker[9] and the factors under 18 U.S.C. § 3553(a); and (4) the prosecutor manipulated the drug quantities involved in the case so as to trigger a ten-year mandatory minimum sentence. The government resists Mr. Williams' motion in its entirety. The government argues that Mr. Grassby's representation was not ineffective and that Mr. Williams' challenges to his sentence are procedurally barred because he failed to raise those issues on direct appeal.

**STANDARD OF REVIEW**

Section 2255 of Title 28 of the United States Code provides, in relevant part, as follows:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authority authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2008).

As the above text illustrates, a § 2255 motion is available only to prisoners in federal custody and must be brought in the same court that

---

[9]United States v. Booker, 543 U.S. 220 (2005).

imposed the sentence now under challenge.  Id.  A § 2255 motion properly

encompasses only four grounds for relief: "(1) that the sentence was imposed in

violation of the Constitution or laws of the United States, (2) that the court was

without jurisdiction to impose such sentence, (3) that the sentence was in

excess of the maximum authorized by law, and (4) that the sentence is

otherwise subject to collateral attack." Jackson v. United States, 495 F.2d

349, 351 (8th Cir. 1974) (citing Hill v. United States, 368 U.S. 424, 426-27

(1962)) (internal quotation marks omitted).

    As a collateral attack on a judgment, a § 2255 motion "can be

maintained only upon grounds which would warrant the granting of a writ of

habeas corpus." Lispcomb v. United States, 226 F.2d 812, 816 (8th Cir. 1955).

That is, a § 2255 motion "must challenge the jurisdiction of the court or must

charge that the defendant has been deprived of due process of law or of other

rights guaranteed him by the Constitution of the United States." Id.; see also

Cassidy v. United States, 428 F.2d 585, 587 (8th Cir. 1970) (a § 2255 motion is

limited to addressing only constitutional or jurisdictional defects in a federal

prisoner's sentence); Bear Stops v. United States, 339 F.3d 777, 781 (8th Cir.

2003) (to prevail on a § 2255 motion, a petitioner must demonstrate that his or

her sentence violated the Constitution or laws of the United States).  "Relief

under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights

and for a narrow range of injuries that could not have been raised on direct

appeal, and if uncorrected, would result in a complete miscarriage of justice."

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

**DISCUSSION**[10]

**A.      Claim of Ineffective Assistance of Counsel**

Mr. Williams alleges that defense counsel George Grassby had a conflict of interest that interfered with his representation of Mr. Williams at the pretrial and trial stages. Specifically, Mr. Williams alleges that the United States Attorney's Office hired Mr. Grassby during this period. Mr. Williams argues that Mr. Grassby failed to present a "vigorous and valiant defense" because he did not want to " 'make waves' with his soon-to-be employer." Mr. Williams points to the following as examples of his counsel's alleged ineffective representation: (1) Mr. Williams "was only able to amass a total of about 15 minutes of one-on-one discussions with his attorney before the trial began"; (2) Mr. Grassby "refused to challenge" several witnesses at trial; (3) Mr. Grassby "refused to challenge" certain evidence introduced at trial; (4) Mr. Grassby "refused to enter letters that showed threats made by the government to prosecute the relatives and friends of Mr. Williams," e.g., the government allegedly threatened Mr. Williams' girlfriend with a ten-year

---

[10]The court notes that Mr. Williams filed his § 2255 motion within the one-year statute of limitations governing such motions, and, thus, his motion is timely. See 28 U.S.C. § 2255(f). Additionally, because the instant motion is the first § 2255 motion filed by Mr. Williams, the statutory restriction on filing successive motions is not an issue in this case. See 28 U.S.C. § 2255(h).

sentence if she did not testify against Mr. Williams; and (5) Mr. Grassby was "very aloof and cold" toward Mr. Williams.

## 1. Sixth Amendment Standard

As a preliminary matter, claims of ineffective assistance of counsel are properly raised for the first time in a § 2255 motion rather than on direct appeal. United States v. Evans, 272 F.3d 1069, 1093 (8th Cir. 2001) (citing United States v. Embrey, 250 F.3d 1181, 1184 (8th Cir. 2001)). The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. CONST. amend VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The following passage from Strickland is instructive on this issue:

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must

identify the acts or omissions of counsel that are alleged not to
have been the result of reasonable professional judgment. The
court must then determine whether, in light of all the
circumstances, the identified acts or omissions were outside the
wide range of professionally competent assistance. In making that
determination, the court should keep in mind that counsel's
function, as elaborated in prevailing professional norms, is to make
the adversarial testing process work in the particular case.

Id. at 690.

The defendant must also show that counsel's unreasonable errors or

deficiencies prejudiced the defense and affected the judgment. Id. at 691.

That is, "the question is whether there is a reasonable probability that, absent

the errors, the factfinder would have had a reasonable doubt respecting guilt.

Id. at 695. In other words, the defendant must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." Id. at 694; see also Lawrence v.

Armontrout, 31 F.3d 662, 666 (8ᵗʰ Cir. 1994) (Prejudice requires a showing that

"counsel's errors were so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable.") (quoting Strickland, 466 U.S. at 687). "A

reasonable probability is a probability sufficient to undermine confidence in the

outcome" based upon a consideration of "the totality of the evidence before the

judge or jury." Lawrence, 31 F.3d at 666 (quoting Strickland, 466 U.S. at 695).

However, Strickland does not require a defendant to show that he more than

likely would have been found innocent, but he must demonstrate at least a

"reasonable probability." Id.

In sum, a defendant must satisfy the following two-prong test.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Id.</u> at 690.

"[J]udicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  <u>Id.</u> at 690; <u>see also</u> <u>Hall v. Luebbers</u>, 296 F.3d 685, 692 (8th Cir. 2002) ("There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment.").  It is the defendant's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  <u>Hall</u>, 296 F.3d at 692; <u>see also</u> <u>Middleton v. Roper</u>, 455 F.3d 838, 851 (8th Cir. 2006) (rejecting the cumulative-error theory for post-conviction relief and holding that the "cumulative effect of alleged trial

counsel errors is not grounds for granting habeas relief").

## 2. Application to Mr. Williams' Case

In light of this standard, the court finds that Mr. Williams' ineffective assistance of counsel claim is without merit. First and foremost, Mr. Williams errs in his claim that Mr. Grassby's conflict of interest stemmed from his hire as a federal prosecutor in the United States Attorney's Office. Mr. Grassby was never hired by that office, but rather was hired by the Federal Public Defender's Office to serve as an Assistant Federal Public Defender.[11] Further, Mr. Grassby informed Mr. Williams about the conflict of interest and secured a waiver from Mr. Williams post-trial. If Mr. Williams had been disappointed with Mr. Grassby's representation *at trial*, it hardly seems logical that he would sign a waiver allowing Mr. Grassby to continue to represent him *post-trial*. In any event, Mr. Williams has not made the requisite showing under Strickland that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" *and* that "counsel's errors were so serious as to deprive [Mr. Williams] of a fair trial, a trial whose result is reliable." See Strickland, 466 U.S. at 690.

Most of Mr. Williams' claims are too vague to be considered by the court

---

[11]The court takes judicial notice of this fact given that Mr. Grassby's position as an Assistant Federal Public Defender is common knowledge in this district. Further, the district court explained this fact to Mr. Williams in its order denying the motion for substitution of counsel.

as evidence of ineffective assistance of counsel.  For example, Mr. Williams claims that Mr. Grassby refused to challenge several witnesses and certain evidence introduced at trial.  However, Mr. Williams failed to specify which witnesses and which evidence are at issue.  Without such information, the court cannot gauge whether Mr. Grassby's performance at trial was both objectively unreasonable and prejudicial to Mr. Williams' defense.  The Eighth Circuit addressed a similar issue in <u>Saunders v. United States</u>, 236 F.3d 950 (8th Cir. 2001).

In <u>Saunders</u>, following a six-week trial, a jury convicted the defendant of various federal crimes involving drug trafficking, firearms, fraudulent cellular phone use, and attempted murder for hire.  <u>Saunders</u>, 236 F.3d at 951.  The Minnesota district court sentenced the defendant to life in prison plus additional terms of years.  <u>Id.</u>  The defendant appealed to the Eighth Circuit, which affirmed the conviction but remanded for resentencing.  <u>Id.</u>  The district court sentenced the defendant again to life in prison, and the defendant did not appeal.  <u>Id.</u>  However, the defendant filed a timely § 2255 motion alleging, among other claims, ineffective assistance of counsel.  <u>Id.</u>  The court denied the defendant's § 2255 motion without holding an evidentiary hearing, but granted a certificate of appealability to the Eighth Circuit on the ineffective assistance of counsel claim only.  <u>Id.</u>  The defendant moved for an evidentiary hearing on this Sixth Amendment claim.  <u>Id.</u>

15

The Eighth Circuit determined that the defendant was not entitled to § 2255 relief, and, thus, an evidentiary hearing was not warranted. Id. at 953. The defendant alleged that his trial counsel was ineffective for failing to call witnesses who could have exonerated him on the attempted murder for hire charge and who could have provided an alibi on the cellular telephone fraud charge. Id. at 952. However, the defendant did not identify the witnesses nor allude to the substance of their testimony. Id. The court found that this lack of specificity made it impossible to gauge whether counsel's performance was "sub-par" and whether such performance prejudiced defendant's case. Id. " 'Because [the defendant] made no showing of what other witnesses were available, how they would have testified, and why such additional evidence would likely have affected the result, he has failed to prove either that counsel's assistance was ineffective or' " prejudicial. Id. at 953 (quoting Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998)).

The court also rejected the defendant's entreaty that his *pro se* status warranted "special treatment." Id. The court found that, although a *pro se* § 2255 motion requires more liberal construction than other civil pleadings, the defendant's motion " 'lack[ed] sufficient specificity under even the most liberal pleading requirements.' " Id. (quoting Cooper v. Schriro, 189 F.3d 781, 785 (8th Cir. 1999)). The court noted that the defendant's motion, which showed "considerable legal sophistication," was "surprisingly vague when it [came] to

16

identifying the alleged witnesses and the substance of their testimony, lacking even an affidavit from [the defendant] saying who they are and what they know and how that helps his case." Id.

Accordingly, this court finds that most of Mr. Williams' examples of ineffective assistance of counsel lack the necessary specificity to entertain such a claim. Mr. Williams' argues that Mr. Grassby refused to challenge several witnesses at trial, but fails to identify the witnesses or how Mr. Grassby failed to challenge them. In reviewing the trial transcript, it appears that Mr. Grassby thoroughly cross-examined each witness called by the government. Mr. Williams' also alleges that Mr. Grassby refused to challenge certain evidence introduced at trial, but the court has no idea which evidence is at issue or how the introduction of such evidence prejudiced the defense. The same is true of Mr. Williams' allegation that Mr. Grassby was aloof and cold. Mr. Williams provides no specific illustrations of such behavior nor explains how such behavior prejudiced his defense.

Mr. Williams also claims that Mr. Grassby erred by refusing to introduce letters by the government that contained threats to Mr. Williams' relatives and friends. As an example, Mr. Williams alleges that the government threatened his girlfriend with a ten-year sentence in order to force her to testify against Mr. Williams. The court will not entertain vague allegations that relate to unidentified relatives and friends of Mr. Williams. With respect to Mr. Williams'

girlfriend, the court is unsure of whom Mr. Williams is referring to, but presumes that it is Raven Tapio, the mother of Mr. Williams' child. Tapio testified at Mr. Williams' trial on behalf of the defense. Tapio testified that she never observed Mr. Williams using methamphetamine. TT 165. She also testified that she usually bought methamphetamine from an individual named Chinto. TT 166-168. Tapio testified that her earlier statements to law enforcement implicating Mr. Williams were untrue. TT 170. On cross-examination, the government questioned Tapio about the inconsistencies in her statement. TT 170-187. The government also raised the issue of Tapio receiving a substantial reduction in her sentence for cooperating with the government. TT 181-182. Tapio testified that initially she did not want to cooperate, affirming that she told another witness that she was not a "nark" despite "what they threaten[ed] [her] with." TT 183, 185. Tapio testified ultimately that Mr. Williams was involved in the conspiracy in that he collected money in furtherance of the conspiracy. TT 186-187.

In light of Ms. Tapio's testimony, the court finds that Mr. Williams' has not shown that Mr. Grassby erred in failing to introduce a letter from the government allegedly threatening Tapio with a ten-year sentence so as to secure her cooperation. The content of this letter, if admissible at trial in the first place, would likely have been cumulative of testimony provided by Tapio at

trial.[12]  The fact that Tapio initially was reluctant to cooperate with the government was known at trial as was the fact that Ms. Tapio received a substantial reduction in her sentence as a result of her cooperation.  Further, Mr. Williams has not shown that there is a reasonable probability that the result of his trial would have been different but for Mr. Grassby's alleged failure to introduce the letter.  In providing inconsistent testimony, Tapio's credibility as a witness was already at issue.  Tapio's motivation to testify had already come to light.  Further, even if the jury were to disregard Tapio's testimony in its entirety, several other witnesses testified as to Mr. Williams' involvement in the conspiracy.

Mr. Williams also alleges that he only spoke to Mr. Grassby for approximately "15 minutes...before the trial began."  Mr. Williams does not explain how this fact, even if the court accepts it as true, prejudiced his defense.  Trial preparation takes weeks, if not months.  Mr. Williams does not allege that he spoke to Mr. Grassby for only 15 minutes for the entire duration of the trial-preparation period.  Additionally, Mr. Williams does not state what pertinent information he would have relayed to Mr. Grassby had they met or what issues remained unresolved prior to trial, if any.  Without such

---

[12]Again, without the letter or without more detailed information about the content of the letter, the court finds it difficult to gauge whether Mr. Grassby erred in not attempting to introduce the letter at trial and whether such alleged failure prejudiced Mr. Williams' defense.

specificity, Mr. Williams' has not met his burden under <u>Strickland</u> to show that his counsel's performance was "sub-par" and that such performance prejudiced his defense. Given the sophistication of Mr. Williams' § 2255 motion, the court finds these glaring omissions puzzling.

## B.    Claims of Sentencing Errors

Mr. Williams' raises three grounds of relief with respect to his sentence: (1) the district court erred in failing to reduce the disparity between his sentence and the sentences of his co-conspirators; (2) the district court failed to consider <u>Booker</u> and all of the § 3553(a) sentencing factors; and (3) the government manipulated the drug quantities involved so as to trigger the ten-year mandatory minimum sentence. Mr. Williams did not raise any of these issues on direct appeal. Thus, such claims are procedurally barred from post-conviction review unless Mr. Williams shows both cause and prejudice. <u>See</u> <u>United States v. Brown</u>, 528 F.3d 1030, 1032 (8th Cir. 2008).

Mr. Williams alleges that both Mr. Grassby and Mr. Borge refused to raise these issues on appeal. Although Mr. Williams did not address the issue of procedural default, the court presumes that Mr. Williams would argue that this alleged failure by counsel[13] to raise the sentencing issues on direct appeal establishes cause for the procedural default. To establish ineffective assistance

---

[13]Only Mr. Borge represented Mr. Williams at sentencing and on appeal. Therefore, it is irrelevant whether Mr. Grassby refused to raise any issue on direct appeal.

of appellate counsel, Mr. Williams must show that his counsel's performance was deficient and that this deficiency prejudiced Mr. Williams' appeal. <u>Id.</u> "The deficient performance standard is rigorous." <u>Id.</u> " 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.' " <u>Id.</u> (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983)). Courts assume, absent evidence to the contrary, that "appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." <u>Id.</u> (additional citation and quotation marks omitted).

"The prejudice standard is equally vigorous." <u>Id.</u> Mr. Williams must show that " 'the result of the proceeding would have been different' " had he raised the sentencing issues on direct appeal. <u>Id.</u> (quoting <u>Brecht v. United States</u>, 403 F.3d 541, 546 (8th Cir. 2005)). In order to determine whether the prejudice standard has been met, a court must determine how the Eighth Circuit would have resolved the issues on appeal. <u>See</u> <u>Brecht</u>, 403 F.3d at 546.[14]

---

[14]In the alternative, a petitioner may excuse the procedural default of his claims by establishing that he is actually innocent of the offenses charged. <u>See</u> <u>Johnson v. United States</u>, 278 F.3d 839, 844 (8th Cir. 2002). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." <u>Id.</u> (additional citations and quotation marks omitted). "This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a...conviction." <u>Id.</u> (additional citations and quotation marks omitted). In this case, however, nothing in Mr. Williams' pleadings would lead the court to conclude that Mr. Williams is claiming actual innocence. Accordingly, this method of excusing procedural default is not

### 1.    Unwarranted Sentencing Disparity

Mr. Williams claims that the district court erred in failing to address the disparate sentences between Mr. Williams and the other conspirators in this case.  Mr. Williams does not identify which co-conspirators he is referring to.  The court assumes that Mr. Williams is referring to co-defendant, Tony Vu, and to Levi Garcia, Daisy Ortiz, and Raven Tapio,[15] the latter being the main players in the conspiracy who testified at Mr. Williams' trial.

Tony Vu, Mr. Williams' co-defendant, entered into a plea agreement with the government by which he pled guilty to one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  This offense carried a mandatory minimum sentence of five years imprisonment.  See 21 U.S.C. § 841(b)(1)(B).  Pursuant to the plea agreement, the government dismissed the remaining counts of possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance.  The plea agreement also stated that the government agreed to recommend that the court reduce Garcia's offense level by two levels for acceptance of responsibility under USSG § 3E1.1(a) and by one level under

applicable to this case and will not be discussed.

[15]Only Tony Vu was charged in the same indictment as Mr. Williams.  See CR. 05-50081-02.  Levi Garcia and Raven Tapio were co-defendants on another indictment.  See CR. 05-50029.  A records search in this district for Daisy Ortiz failed to yield any results.

USSG § 3E1.1(b).  The district court sentenced Vu to 60 months imprisonment, the mandatory minimum, followed by three years supervised release.

Charged in an indictment with Raven Tapio, Levi Garcia entered into a plea agreement by which he pled guilty to one count of conspiracy to distribute a controlled substance.[16]  See CR. 05-50029-01.  Pursuant to the plea agreement, the government dismissed the remaining three counts of possession with intent to distribute a controlled substance.  The plea agreement also stated that the government agreed to recommend that the court reduce Garcia's offense level by two levels for acceptance of responsibility under to USSG § 3E1.1(a) and by one level under USSG § 3E1.1(b).  At sentencing, Garcia also received a downward departure from the sentencing guidelines range pursuant to USSG § 5K1.1 because of his cooperation with the government.  SH 17.  The district court sentenced Garcia to 70 months imprisonment followed by five years supervised release.

Raven Tapio entered into a plea agreement by which she pled guilty to one count of conspiracy to distribute a controlled substance.[17]  See CR. 05-

_____

[16]The indictment charged Garcia with, among other offenses, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  This offense carried a minimum mandatory sentence of five years imprisonment.  See 21 U.S.C. § 841(b)(1)(B).

[17]The indictment charged Tapio with, among another offense, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  This offense carried a minimum mandatory sentence of five years imprisonment.  See 21 U.S.C. § 841(b)(1)(B).

50029-02.  Pursuant to the plea agreement, the government dismissed the remaining count of maintaining a place for drug distribution and use.  The plea agreement also stated that the government agreed to recommend that the court reduce Tapio's offense level by two levels for acceptance of responsibility under to USSG § 3E1.1(a) and by one level under USSG § 3E1.1(b).  The government moved for downward departure pursuant to USSG § 5K1.1.  Tapio's counsel argued that Tapio was entitled to receive a sentence below the mandatory minimum five-year sentence because she met the requirements of the safety valve provision under 18 U.S.C. § 3553(f).  The district court sentenced Tapio to 24 months imprisonment followed by four years supervised release.

A records search for the criminal file of Daisy Ortiz revealed that she was not indicted or convicted in this district.

Mr. Williams is correct in stating that a sentencing court *must* consider the factors set forth in 18 U.S.C. § 3553(a) when determining a defendant's sentence.  <u>See</u> <u>United States v. Crumley</u>, 528 F.3d 1053, 1068 (8th Cir. 2008).  Section 3553(a)(6) instructs the court to avoid "unwarranted sentence disparities among defendants with *similar records* who have been found guilty of *similar conduct.*"  <u>See</u> 18 U.S.C. § 3553(a)(6) (emphasis added).  As evident from the plain language of the statute, the goal of § 3553(a)(6) is to reduce unwarranted sentence disparities among similarly-situated defendants.  However, Mr. Williams' argument fails because he is not similarly situated to

other members in the conspiracy. First, Mr. Williams was not convicted of the same offenses as the other defendants at issue. Following a jury trial, Mr. Williams was found guilty of, among other offenses, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Because of the drug quantities involved in the conspiracy with co-defendant Tony Vu, Mr. Williams was charged under § 841(b)(1)(A), thereby triggering a ten-year mandatory minimum sentence.

In contrast, Levi Garcia and Raven Tapio, co-defendants on a separate indictment, were charged with, among other offenses, conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Because a lesser drug quantity was involved, Garcia and Tapio were charged under § 841(b)(1)(B), thereby triggering only a five-year mandatory minimum sentence. Pursuant to separate plea agreements, both Garcia and Tapio pled guilty to this offense. Also pursuant to a plea agreement, Tony Vu pled guilty to one count of possession with intent to distribute a controlled substance, which carried a mandatory minimum sentence of five years imprisonment.

Further, disparities in sentences "generally are not unwarranted where one defendant cooperates and one does not, or where one defendant plays a greater role in the conspiracy than the other." Crumley, 528 F.3d at 1068. Pursuant to a plea agreement, Tapio, Garcia, and Vu each received a three-

level reduction in his and her offense level under USSG § 3E1.1(a) and

3E1.1(b).[18] Further, at sentencing, Garcia received a § 5K1.1[19] downward

_____

[18]Entitled "Acceptance of Responsibility," § 3E1.1 of the United States Sentencing Commission Guidelines Manual reads as follows:

> (a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.
>
> (b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

See USSG § 3E1.1 (emphasis in original).

[19]Entitled "Substantial Assistance to Authorities," § 5K1.1 of the United States Sentencing Commission Guidelines Manual reads as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may depart from the guidelines*.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> > (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
> >
> > (2) the truthfulness, completeness, and reliability of any

departure from the sentencing guidelines range. SH 17. As there is no transcript of the sentencing hearing for Tapio, the court cannot conclusively determine whether the district court granted the government's motion for a § 5K1.1 downward departure or Tapio's motion for a sentence below the mandatory minimum pursuant to the safety valve provision.[20] However, given that Tapio was sentenced below the mandatory minimum, it seems logical that the district court granted these motions. Indeed, Tapio was the only defendant to receive a sentence below the mandatory minimum, presumably because she qualified for the safety valve provision. In contrast, Mr. Williams, who received a sentence of 121 months on the conspiracy count,[21] only one month higher

─────────────────

> information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

See USSG § 5K1.1 (emphasis added).

[20]The safety valve provision is contained in 18 U.S.C. § 3553(f) and USSG § 5C1.2. This provision will be discussed in greater detail later in this opinion.

[21]Mr. Williams received concurrent sentences of 121 months for the three offenses he was convicted of. The conspiracy conviction carried a mandatory minimum sentence of ten years, or 120 months. See 21 U.S.C. § 841(b)(1)(A). The distribution of a controlled substances offenses carried mandatory minimum sentences of five years. See 21 U.S.C. § 841(b)(1)(B). However, if a person commits this offense after a prior conviction for a felony drug offense had become final, a ten-year mandatory minimum sentence is triggered. See

than the mandatory minimum, was ineligible to receive the benefit of the safety valve provision, a § 5K1.1 downward departure, or a three-level reduction pursuant to §§ 3E1.1(a) and 3E1.1(b). Importantly, Mr. Williams did not cooperate with or provide substantial assistance to the government[22] so as to potentially qualify for a sentence below the advisory guidelines range or below the mandatory minimum. See USSG § 5K1.1; 18 U.S.C. § 3553(e)[23]-(f); 28

---

id. The court does not have the benefit of Mr. Williams' presentence report and, thus, is unfamiliar with his criminal history. However, at sentencing, the district court noted that Mr. Williams' "criminal history consists of one felony level conviction, which is the same conduct as the instant offense." SH 6. Thus, the court is unsure if the five-year or ten-year mandatory minimum sentence applies to the distribution offenses. The distinction, however, is largely irrelevant, as Mr. Williams faced a ten-year mandatory minimum sentence for the conspiracy conviction. As all three sentences ran concurrently, Mr. Williams faced a period of incarceration of at least ten years regardless of what the mandatory minimum sentences were for the distribution convictions. In actuality, Mr. Williams was sentenced to only one month more than the ten-year mandatory minimum.

[22]Mr. Williams does not allege that he provided substantial assistance to or cooperated with the government in any way nor does the record contain any such evidence.

[23]Section 3553(e) of Title 18 of the United States Code, which is part of a broader statute dealing with the imposition of sentences, reads as follows:

> **(e) Limited authority to impose a sentence below a statutory minimum.**–Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

U.S.C. § 994(n).[24]  Indeed, Mr. Williams *could not* have been sentenced below

the mandatory minimum sentence without agreeing to substantially assist the

government.[25]  See United States v. Freemont, 513 F.3d 884, 890 (8th Cir.

2008) ("The 'reduction below the statutory minimum must be based exclusively

on assistance-related considerations.' ") (quoting United States v. Williams, 474

---

See 18 U.S.C. § 3553(e) (emphasis in original).

[24]Section 994(n) of Title 28 of the United States Code, which is part of a broader statute detailing the duties of the United States Sentencing Commission, states as follows:

> (n) The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

See 28 U.S.C. § 994(n).

[25]As a point of clarification, "[a] motion under § 5K1.1 authorizes the sentencing court to depart below the applicable advisory guideline range in determining the advisory guideline sentence, and a § 3553(e) motion permits the court to sentence below a statutory minimum." United States v. Williams, 474 F.3d 1130, 1131 (8th Cir. 2007) (additional citations omitted).  "[G]uideline section 5K1.1 and statutory section 3553(e) provide two separate, independent grounds for departing from the appropriate guideline range." United States v. Womack, 985 F.2d 395, 399 (8th Cir. 1993) (citing United States v. Rodriguez-Moralez, 958 F.2d 1441, 1447 (8th Cir. 1992)).  Further, "a sentencing court may depart *below* the statutory minimum sentence only when the government has made a motion specifically under section 3553(e)." Id. (emphasis in original) (citing Rodriguez-Moralez, 958 F.2d at 1447).  Thus, a § 5K1.1 motion made by the government allows the sentencing court to depart *down to* the mandatory minimum while a motion under § 3553(e) allows the sentencing court to depart *below* the mandatory minimum.  Id.

F.3d 1130, 1131 (8th Cir. 2007)).  Because Mr. Williams was not similarly

situated to Vu, Tapio, and Garcia, the disparities in their sentences were not

unwarranted.  See United States v. Cain, 487 F.3d 1108, 1114-1115 (8th Cir.

2007) (court rejected defendant's claim of unwarranted sentencing disparity

because defendant was not similarly situated to other co-conspirators who

cooperated and testified for the government).

Mr. Williams argues that he was "punished for exercising his

constitutional right to a jury trial," presumably because he did not receive the

benefit of the safety valve provision.  This provision is contained in USSG

§ 5C1.2 and 18 U.S.C. § 3553(f) and reads as follows:

> **(f) Limitation on applicability of statutory minimums in certain cases.**–Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that–
>
>> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>>
>> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>>
>> (3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

See 18 U.S.C. § 3553(f) (emphasis in original).[26]

If all of the five factors set forth in § 3553(f) are met, the district court may sentence a defendant in accordance with the applicable guidelines range without regard to any mandatory minimum sentence. Id. In Mr. Williams' case, he was ineligible to receive this benefit not because he went to trial but because, at minimum, he did not provide the government with all of the information and evidence he had about the offenses. The language of § 3553(f)(5) clearly signals that a defendant can provide truthful information to the government at any time prior to sentencing. See 18 U.S.C. § 3553(3)(5); United States v. Tournier, 171 F.3d 645, 647 (8th Cir. 1999) (stating that defendants who have put the government to the expense and burden of a jury

---

[26]The five factors enumerated in 18 U.S.C. § 3553(f) are identical to those in USSG § 5C1.2.

31

trial can nevertheless qualify for safety valve relief under § 3553(f) by providing

truthful information after trial but before sentencing).

Here, Mr. Williams' trial concluded on August 24, 2006, and his

sentencing hearing was not until December 4, 2006. Mr. Williams had over

three months in which he could have contacted the government to provide

information. He did not do so, and it was this inaction on his part that

deprived him of the benefit of the safety valve provision at sentencing. Thus,

his appellate counsel did not err nor prejudice Mr. Williams by declining to

raise these sentencing issues on appeal. Accordingly, Mr. Williams cannot

establish the requisite cause and prejudice to excuse the procedural default of

this claim.

### 2.   <u>Booker</u> and § 3553(a)

Mr. Williams argues that the district court violated his due process rights

by not considering <u>Booker</u> and all of the factors contained in 18 U.S.C.

§ 3553(a) at sentencing. Mr. Williams also challenges the constitutionality of

mandatory minimum sentences in general.

The major holding from the Supreme Court's decision in <u>Booker</u> is that

the sentencing guidelines are no longer mandatory. <u>United States v.</u>

<u>Mickelson</u>, 433 F.3d 1050, 1053 (8th Cir. 2006) (citing <u>Booker</u>, 543 U.S. at

220). "This holding transformed the federal guideline system from a mandatory

regime to a system of advisory guidelines..." <u>Id.</u> Under the advisory guidelines

regime announced in <u>Booker</u>, and expounded upon in <u>Rita</u>[27] and <u>Gall</u>,[28] courts must consider the factors set forth in 18 U.S.C. § 3553(a). <u>United States v. McGlothen</u>, __F.3d__, 2009 WL 349145 at *2 (8th Cir. Feb. 13, 2009) (citing <u>United States v. Gray</u>, 533 F.3d 942, 943 (8th Cir. 2008)). However, a court *cannot* utilize the § 3553(a) factors to sentence a defendant below a mandatory minimum sentence. <u>See</u> <u>Williams</u>, 474 F.3d at 1132.

Section 3553(a) reads as follows:

(a) Factors to be considered in imposing a sentence.– The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range

---

[27]<u>Rita v. United States</u>, 551 U.S. 338, 127 S.Ct. 2456 (2007).

[28]<u>Gall v. United States</u>, __U.S.__, 128 S.Ct. 586 (2007).

established for–
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

<u>See</u> 18 U.S.C. § 3553(a).

"[S]entencing judges are presumed to know the law and the need to consider the § 3553 factors." <u>McGlothen</u>, 2009 WL 349145 at *2 (citing <u>Gray</u>, 533 F.3d at 943). "Further, there is no need to recite each § 3553 factor; it is enough that a judge only reference some of the factors." <u>Id.</u> (citing <u>Gray</u>, 533 F.3d at 944). "[In determining whether the district court considered the relevant factors in a particular case, 'the context for the appellate court's review is the entire sentencing record, not merely the district court's statements at the hearing.'" <u>Gray</u>, 533 U.S. at 944 (quoting <u>United States v. Perkins</u>, 526 F.3d 1107, 1111 (8th Cir. 2008)).

In this case, the court is satisfied that the district court appropriately considered the § 3553(a) factors in sentencing Mr. Williams. At the sentencing hearing, the court acknowledged the nature of the counts of conviction. SH 6. The district court also acknowledged the presentence report. <u>See</u> <u>United States v. Jones</u>, 493 F.3d 938, 941 (8th Cir. 2007) ("The report contains extensive information regarding [the defendant], his history and characteristics, the nature and circumstances of the offense, the kinds of sentences available, and a recommended advisory sentencing guidelines range, all of which are factors under § 3553(a)."). The court noted that the presentence report stated that Mr. Williams was responsible for 28 ounces of methamphetamine. SH 6. Both the government and defense counsel acknowledged that the advisory guidelines

35

range of between 121 and 151 months was appropriate.  SH 2, 4.  The court

noted that this range was greater than 24 months apart.[29]  SH 6.  Mr. Williams'

counsel acknowledged that he "ha[d]n't found anything to argue to the Court to

get this out of the guidelines, at the very least to get below the mandatory

minimum."  SH 4.

     In asking the court to sentence Mr. Williams toward the low end of the

guidelines range, Mr. Williams' counsel discussed the personal characteristics

of Mr. Williams–his youth, status as an illegal immigrant, addiction to

methamphetamine, and his role within his family as a financial provider.

SH 3-4.  The court noted Mr. Williams' status as an illegal alien and his

criminal history.  SH 6.  The court waived the fine in this case after

determining that Mr. Williams could not pay a fine.  SH 7.  The court noted

that restitution was not an issue in this case.  Id.  In passing sentence, the

court acknowledged that it considered the presentence report, all of the

evidence presented in the case, and the need to protect the public and to

---

[29]This statement bolsters the court's conclusion that the district court
was aware of the importance of considering § 3553 in sentencing Mr. Williams.
The district court stated that it "want[ed] to speak to the justification when [it]
impose[d] the sentence because the bottom and top of the guidelines are
greater than 24 months apart."  SH 6.  Section 3553(e) of Title 18 of the United
States Code states that a court must state in open court and at the time of
sentencing "the reasons for the imposition of the particular sentence."  See 18
U.S.C. § 3553(e).  If the sentence is "of the kind, and within the range
described in subsection (a)(4) and that range exceeds 24 months, [the court
must also state] the reason for imposing a sentence at a particular point within
the range."  Id.

rehabilitate Mr. Williams.  Id.  All of these considerations reflect factors

described in § 3553(a).

Further, " 'when a judge decides simply to apply the Guidelines to a

particular case, doing so will not necessarily require lengthy explanation.' "

Gray, 533 F.3d at 944 (quoting Rita, 127 S.Ct. At 2468); see also McGlothen,

2009 WL 349145 at *3 ("Judges, however, are not required to detail their

reasons for a sentence when merely applying the Guidelines to a case.") (citing

United States v. Petreikis, 551 F.3d 822, 824-25 (8th Cir. 2009)).  "Where a

sentencing judge imposes a sentence within the advisory guidelines range,

'circumstances may well make clear' that the judge believed the case was

typical, and 'rest[ed] his decision upon the Commissioner's own reasoning that

the Guidelines sentence is a proper sentence.' "  Gray, 533 F.3d at 944 (quoting

Rita, 127 S.Ct. at 2468).  Here, the district court sentenced Mr. Williams to the

very low end of the advisory guidelines.  See id. at 946 (court concluded that

the "sentencing judge rested his decision on the Sentencing Commission's own

reasoning that the advisory guidelines sentence is sufficient, but not greater

than necessary, to satisfy the purposes of § 3553(a)(2) for the typical offender

with [the defendant's] conduct and criminal history").  The court has no doubt

that the district court was aware of the § 3553(a) factors and considered them

in determining an appropriate sentence.  See McGlothen, 2009 WL 349145 at

*3 ("[E]nough must be said to make it apparent to an appellate court that the

district court 'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority.' ") (quoting United States v. Roberson, 517 F.3d 990, 994 (8th Cir. 2008)).

The court also rejects Mr. Williams' challenge to the constitutionality of mandatory minimum sentences. "[N]either Booker, Gall, nor § 3553(a) affect a statutory minimum sentence." Freemont, 513 F.3d at 890. The Eighth Circuit addressed this topic at length in Williams:

> Nothing in the reasoning of Booker expands the authority of a district court to sentence below a statutory minimum. The Court's remedial holding provided that to cure the constitutional infirmity of the mandatory guidelines system, a district court is authorized to consider the factors set forth in § 3553(a), and to vary from the sentence otherwise indicated by the sentencing guidelines. But Booker did not question the constitutionality of statutory minimum sentences, see United States v. Rojas-Coria, 401 F.3d 871, 874 n. 4 (8th Cir.2005), and while the Court excised §§ 3553(b)(1) and 3742(e) from the Code, § 3553(e) was unmentioned in the opinion. The Court deviated from the mandatory guidelines system adopted by Congress only insofar as the deviation was necessary to make the remaining advisory system consistent with the Sixth Amendment. Booker, 543 U.S. at 263-64, 125 S.Ct. 738. *Because statutory minimum sentences remain constitutional,* and it is constitutional for Congress to limit a court's authority to sentence below such minimums, the remedial holding of Booker does not impact the pre-existing limitations embodied in § 3553(e).

Williams, 474 F.3d at 1132 (emphasis added); see also United States v. Castro-Higuero, 473 F.3d 880, 888 (8th Cir. 2007) (rejecting defendant's argument that Booker rendered mandatory minimum sentences unconstitutional) (citing United States v. Warford, 439 F.3d 836, 836 (8th Cir. 2006) (same)).

Because the district court properly considered the § 3553(a) factors in

determining Mr. William's sentence, his appellate counsel did not err nor prejudice Mr. Williams by declining to raise this issue on appeal. Accordingly, Mr. Williams cannot establish the requisite cause and prejudice to excuse the procedural default of this claim.

### 3. Drug Quantities

Mr. Williams' final claim is that the government manipulated his sentence by arbitrarily and capriciously assigning a drug quantity that would trigger a ten-year mandatory minimum sentence, "thereby eliminating any consideration of § 3553(a) sentencing factors..." Mr. Williams argues that the drug weights were never proven at trial, but rather "magically appeared" in the presentence report.

Mr. Williams is in error. He fails to take into account the role of the jury in determining the drug quantities attributable to him. Mr. Williams was tried alone–the other co-defendant on the same indictment, Tony Vu, did not go to trial. Because Mr. Williams was the only defendant at trial, the presumption is strong that the drug quantity found by the jury was the quantity directly attributable to Mr. Williams. After hearing all of the evidence presented at trial, the jury found that Mr. Williams was guilty, beyond a reasonable doubt, of one count of conspiracy to distribute 500 grams or more of methamphetamine[30]

---

[30]For purposes of sentencing, a court "holds a conspirator responsible not only for his own acts but also for all of the reasonably foreseeable acts of others taken in furtherance of the conspiracy." United States v. Grajales-Montoya,

and two counts of distribution of 50 grams or more of methamphetamine.

Indeed, the jury had the option of finding that lesser quantities of drugs were

involved. Thus, it was the determination of the jury that triggered the ten-year

mandatory minimum.[31] The court also notes that Mr. Williams does not

---

117 F.3d 356, 364-65 (8th Cir. 1997) (citing USSG § 1B1.3(a)(1)(B)) (additional citation omitted).

[31]Jury instruction number 11 reads as follows:

If you find the defendant guilty of the "conspiracy offense or either count of distribution of a controlled substance, you must also determine beyond a reasonable doubt the quantity of methamphetamine involved in such count of conviction for which the defendant can be held responsible, even if that amount is less than the amount charged in the indictment. Therefore, you must ascertain whether or not the controlled substance in question was in fact methamphetamine, as charged in the indictment, and you must determine beyond a reasonable doubt the amount of the methamphetamine involved in the offenses for which the defendant can be held responsible. In so doing, you may consider all of the evidence in the case that may aid in the determination of these issues.

A defendant guilty of conspiracy to distribute methamphetamine, as charged in the indictment, is responsible for quantities of methamphetamine that he or she actually distributed or agreed to distribute. Such a defendant is also responsible for those quantities of methamphetamine that fellow conspirators distributed or agreed to distribute, it you find that the defendant could have reasonably foreseen, at the time he joined the conspiracy or while the conspiracy lasted, that those prohibited acts were a necessary or natural consequence of the conspiracy. A defendant guilty of distribution of a controlled substance is responsible for those quantities of methamphetamine that he or she distributed, whether jointly or solely.

You must determine the *total quantity* of the controlled substance involved in the offense(s) of conviction for which the defendant can be held responsible, and, in so doing, indicate the

challenge the sufficiency of the evidence presented at trial, the district court's jury instructions, or the jury's verdict. Finally, Mr. Williams is in error that the district court did not consider the factors set forth in § 3553(a) because a mandatory minimum sentence applied. As discussed previously, the district court appropriately considered the § 3553(a) factors in determining a reasonable sentence for Mr. Williams within the advisory guidelines range. Because Mr. Williams' claim of prosecutorial misconduct is without merit, his appellate counsel did not err nor prejudice Mr. Williams by declining to raise this issue on appeal. Accordingly, Mr. Williams cannot establish the requisite cause and prejudice to excuse the procedural default of this claim.

## C. Mr. Williams' Motion for an Evidentiary Hearing

Mr. Williams moves for an evidentiary hearing on his § 2255 motion primarily to prove that Mr. Grassby had a conflict of interest that impeded his

---

*range* within which that *total quantity* falls: either 500 grams or more of methamphetamine; less than 500 grams but at least 50 grams of methamphetamine; or less than 50 grams of methamphetamine, all of which are reflected on the Verdict form. You must determine the *total quantity* in terms of grams of methamphetamine. In making your determination of quantity as required, it may be helpful to remember that there are 1000 grams in one kilogram; 453.6 grams in one pound; and 28.35 grams in one ounce. Additionally, there are 16 ounces in one pound.

Again, you must determine *beyond a reasonable doubt* the quantity of methamphetamine involved in the offense(s) of conviction for which the defendant can be held responsible.

See Jury Instruction No. 11 (emphasis in original).

representation of Mr. Williams.  See Docket 4.  When considering a petitioner's § 2255 motion, the district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.  Accordingly a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (additional citations and quotation marks omitted); see also Saunders, 236 F.3d at 952 ("An evidentiary hearing on a § 2255 petition may be denied only if 'the motion and the files and the records of the case conclusively shoe that the prisoner is entitled to no relief.' ") (quoting 28 U.S.C. § 2255).[32]

The court finds that Mr. Williams is not entitled to an evidentiary hearing as the record conclusively shows that he is not entitled to § 2255 relief. Mr. Williams' ineffective assistance of counsel claim is completely without

_____

[32]The Eighth Circuit reviews a lower court's decision to deny an evidentiary hearing for abuse of discretion.  Saunders, 236 F.3d at 952.  "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates [the Eighth Circuit] to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo."  Id. (additional citations omitted).  The Eighth Circuit considers the validity of the petitioner's claims in order to decide if the petitioner is entitled to an evidentiary hearing in the district court.  Id.  If the Eighth Circuit determines "from the motion and the supporting record in the case that [petitioner] is not entitled to § 2255 relief, then no hearing was, or is now, required."  Id.

merit.  His allegation that Mr. Grassby had a conflict of interest because he was hired by the United States Attorney's Office is erroneous.  Further, Mr. Williams has failed to show how his defense was prejudiced by any of the errors alleged to have been made by Mr. Grassby, even if the court accepts such errors as true.  With respect to the three sentencing errors alleged by Mr. Williams, he has not shown the requisite cause and prejudice to overcome the procedural default of these claims.  The record is clear that Mr. Williams' sentence was appropriate and constitutional.  Thus, the court recommends that Mr. Williams' motion for an evidentiary hearing be denied.

**D.    Mr. Williams' Motion to Amend his § 2255 Motion**

Mr. Williams also moves to amend his § 2255 motion by adding a claim directed at the Bureau of Prisons ("BOP").  See Docket 5.  Mr. Williams alleges that the BOP failed to run his federal sentence concurrent with his state sentence as directed by the district court in accordance with Mr. Williams' judgment of conviction.

The court finds that a Mr. Williams is challenging the execution of his sentence and, thus, a § 2255 motion is not the appropriate vehicle to address his complaint.[33]   See e.g., Fegans v. United States, 506 F.3d 1101 (8th Cir. 2007) (petitioner properly filed a petition under 28 U.S.C. § 2241 to challenge

---

[33]A court may raise the issue of subject matter jurisdiction at any time either *sua sponte* or on motion of either party.  United States v. Hutchings, 835 F.2d 185, 186 (8th Cir. 1987).

the BOP's refusal to run petitioner's federal sentence concurrent with a state sentence not yet imposed); <u>Bell v. United States</u>, 48 F.3d 1042, 1043 (8th Cir. 1995) (court concluded that petitioner's claim regarding credit for time served challenged the execution of his sentence and not the legality or validity of the sentence and, thus, must be raised in a § 2241 petition). It is well established in the Eighth Circuit that federal prisoners may raise a § 2255 motion to attack the validity or legality of a sentence but must pursue federal habeas relief under 28 U.S.C. § 2241 to attack the execution of a sentence. <u>Matheny v. Morrison</u>, 307 F.3d 709, 711 (8th Cir. 2002); <u>Bell</u>, 48 F.3d at 1043. Additionally, unlike a § 2255 motion which must be brought in the district of the sentencing court, a § 2241 habeas petition must be brought in the district where the petitioner is incarcerated at the time of filing the petition. <u>Matheny</u>, 307 F.3d at 711; <u>Bell</u>, 48 F.3d at 1043-44; <u>United States v. Monteer</u>, 556 F.2d 880, 881 (8th Cir. 1977) ("Habeas corpus jurisdiction [under § 2241] lies only when petitioner's custodian is within the jurisdiction of the district court.").

Because Mr. Williams must raise this claim in a § 2241 petition in the district of New Jersey (the district where he is presently incarcerated), this court lacks subject matter jurisdiction over the claim and cannot address it on the merits. <u>See</u> <u>United States v. Hutchings</u>, 835 F.2d 185, 186 (8th Cir. 1987) (finding that the district court lacked subject matter jurisdiction over petitioner's § 2255 motion because his challenge to the execution of his

sentence had to be raised in a § 2241 petition). Accordingly, the court recommends that Mr. Williams' motion to amend be denied.

## CONCLUSION

In accordance with the above discussion, the court recommends that Mr. Williams' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docket 1] be denied in its entirety. The court further recommends that Mr. Williams' motion for an evidentiary hearing [Docket 4] and motion to amend [Docket 5] also be denied.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by thedistrict court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated March 6, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE